IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FREDDIE MAC a/k/a Federal Home Loan Mortgage Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>HOMER BROOKS and LETHA BROOKS<br><br>        Defendants / Counterclaim Plaintiffs,<br><br>v.<br><br>FREDDIE MAC a/k/a Federal Home Loan Mortgage Corporation, PROMMIS SOLUTIONS, a limited liability company, PROMMIS SOLUTIONS HOLDING CORPORATION<br><br>        Counterclaim Defendants. | Civil Action No. 3:11cv313-WHA<br>(WO) |

## **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

This case is before the court on a Motion to Dismiss (Doc. #25), filed by Plaintiff/Counterclaim Defendant Freddie Mac, together with Defendant/Counterclaim Plaintiffs' Response thereto (Doc. #48).

In December, 2010, Plaintiff/Counterclaim Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") sued Homer and Letha Brooks ("Brooks"),[1] as well as fictitious defendants, in the Circuit Court of Chambers County, Alabama. Brooks answered Freddie

---

[1] Because Homer Brooks is deceased, this court will refer to Homer and Leetha Brooks in the singular as "Brooks."

Mac's Complaint and also brought counterclaims against Freddie Mac; PNC; McCalla Raymer, LLC; MERS; MERSCORP; Prommis Solutions; and Prommis Solutions Holding Corporation. On April 22, 2011, Freddie Mac timely removed the state court case to this court pursuant to 12 U.S.C. § 1452(f), and this court denied Brooks' Motion to Remand.

McCalla Raymer, LLC was dismissed by Stipulation on May 12, 2011 (Doc. #42). The court granted Motions to Dismiss of PNC (Doc. #34) and MERS and MERSCORP (Doc. #46) by order entered on August 22, 2011 (Doc. #53). Prommis Solutions and Prommis Solutions Holding Corporation remain as Counterclaim Defendants.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.  MOTION TO DISMISS STANDARD

The court accepts the nonmovant's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the pleading in the nonmovant's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009).  "[A nonmovant's] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a pleading need not contain "detailed factual allegations," but instead the pleading must contain

"only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

Ordinarily, in considering a motion to dismiss, the court does not consider matters presented outside the pleadings. However, "[i]n ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the [nonmovant's] claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (citations omitted).

### III. FACTS

On May 6, 2005, Brooks received a mortgage loan on her home from Charterbank. In exchange, Brooks executed a promissory note in favor of Charterbank, and also executed a mortgage instrument. The mortgage instrument defined the "Borrower" or "Mortgagor" as Brooks, and the "Lender" as Charterbank. The mortgage instrument defined the "Mortgagee" as follows:

> MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. *MERS is the mortgagee* under this Security Instrument.

Doc. #25-1 at 4 (emphasis added). The mortgage instrument further explained:

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrowers's covenants and agreements under this Security Instrument and the Note. For this purpose, *Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale*, [Brooks' home]. . . .
>
> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lender's successors and assigns) has*

3

> *the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property*; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Doc. #25-1 at 6 (emphasis added). The mortgage instrument also stated that the property could be publicly auctioned under a power of sale upon Brooks' default.

On April 13, 2010, MERS assigned the mortgage and promissory note to PNC. The assignment stated:

> FOR VALUE RECEIVED, [MERS], does hereby transfer, assign, set over and convey unto [PNC], its successors, transferees, and assigns forever, all right, *title and interest of [MERS] in and to that certain Mortgage executed by [Brooks], to [MERS] AS NOMINEE FOR CHARTERBANK dated the 6th day of May 2005, and filed for record . . . covering property described in said mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned in and to the property described in said Mortgage*.

Doc. #46-2 at 2 (emphasis added).

In mid-2010, Brooks defaulted on her mortgage. *See* Doc. #46-3. As a result, PNC foreclosed on Brooks' property through a non-judicial foreclosure sale, conducted on August 20, 2010.[2] At the sale, Freddie Mac was the highest bidder, and accordingly, PNC sold its interest in Brooks' property to Freddie Mac. Freddie Mac subsequently sought to take possession of Brooks' property, and Brooks refused to allow Freddie Mac to do so. Freddie Mac then brought an action to eject Brooks from the property, and in response, Brooks brought the counterclaims at issue here.

---

[2] *Ala. Code* §§ 35-10-11 to -16 sets forth the requirements for conducting a non-judicial foreclosure sale with respect to a mortgage executed in 1989 or later. Brooks does not contend that the sale itself was conducted in an improper manner, rather, Brooks argues that there was no right to conduct a foreclosure in the first place.

## IV. **DISCUSSION**

Brooks has made the following counterclaims against Freddie Mac: (1) negligence or wantonness; (2) action to quiet title to real property; (3) trespass; (4) wrongful foreclosure; and (5) negligent or wanton hiring, supervision, training or retention.  Each of these counterclaims is due to be dismissed.

1. *Negligence or Wantonness and Negligent or Wanton Hiring, Supervision, Training or Retention Counterclaims*

Brooks' negligence or wantonness and negligent or wanton hiring, supervision, training or retention counterclaims are due to be dismissed.

First, Brooks has not pled sufficient facts to state a counterclaim for negligence or wantonness.  This court cannot discern what specific duty Brooks claims that Freddie Mac owed to Brooks, how Freddie Mac breached that duty, or how Freddie Mac's conduct was the cause in fact and proximate cause of Brooks' injuries.  Because Brooks' pleading makes no non-conclusory allegations that this court can discern regarding negligence or wantonness, that counterclaim is due to be dismissed.

Second, the court is completely at a loss as to what facts Brooks relies on in her negligent or wanton hiring, supervision, training, or retention counterclaim, because she has not alleged any such facts.  Thus, this claim is due to be dismissed.

2. *Quiet Title, Wrongful Foreclosure, and Trespass Counterclaims*

Brooks' quiet title, wrongful foreclosure, and trespass counterclaims are premised on the allegation that the foreclosure on Brooks' property was improper. Therefore, if the foreclosure on Brooks' property was proper, these claims fail.

Brooks argues that a party who holds a mortgage but is not the holder of the underlying promissory note cannot foreclose on the mortgage, and therefore, "MERS" could not foreclose on the mortgage because it lacked any interest in the underlying promissory note. The court rejects Brooks' argument.

As a preliminary note, Brooks' argument that MERS improperly foreclosed is irrelevant, because MERS did not foreclose on Brooks' property. Rather, PNC did so.[3]

Nevertheless, even if Brooks directed her argument at the actions of PNC, the actual foreclosing party, she would not prevail. In *Crum v. LaSalle Bank*, 55 So. 3d 266 (Ala. Civ. App. 2009), the Court of Civil Appeals of Alabama rejected a case with materially identical facts as the one at bar. In *Crum*, a borrower executed a promissory note in favor of a lender, and also executed a mortgage instrument, which named MERS as the mortgagee of the property. *Id.* at 267. The mortgage instrument stated, in pertinent part:

> MERS is a separate corporation that *is acting solely as a nominee* for Lender and Lender's successors and assigns. *MERS is the mortgagee under this Security Instrument*. . . .

---

[3]The court notes that Brooks' response brief is extraordinarily confusing. For example, Brooks writes that "MERS places great weight . . ." (Doc. #48 at 8) and "MERS argues . . . ." (Doc. #48 at 12) with respect to arguments made by Freddie Mac, not MERS, despite the fact that Brooks notes at the beginning of her brief that she is responding to Freddie Mac's Motion to Dismiss (Doc. #48 at 1). Brooks also argues, at various points in her brief, that either Freddie Mac or MERS foreclosed on her property, when in fact PNC was the foreclosing party. Sadly, at no point in Brooks' response brief did she state that PNC foreclosed on her property, when PNC was the actual foreclosing party.

> This Security Instrument *secures to Lender*: (I) the repayment of the [l]oan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably *mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS*, with power of sale, the . . . . property . . . .
>
> *Borrower understands and agrees that* MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, *MERS (as nominee for Lender and Lender's successors and assigns) has the right*: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [p]roperty; and *to take any action required of Lender* including, but not limited to, releasing and canceling this Security Instrument.

*Id.* at 267-68 (emphasis and alterations in original). The mortgage instrument further explained that the property could be publicly auctioned under a power of sale upon the borrower's default. *Id.*

Approximately a year after the original mortgage and promissory note were executed, MERS, as the lender's nominee, assigned the note in favor of an assignee, who later foreclosed on the borrower. *Id.* The assignment document stated:

> [MERS] hereby assigns unto [the assignee] the . . . Security Deed having an original principal sum of $112,800.00 [plus] interest, secured thereby, [t]ogether with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and [MERS] hereby grants and conveys unto the . . . [a]ssignee [its] beneficial interest under the Security Deed.
>
> To have and to hold *the said Mortgage and Note*, and also the said property unto the . . . [a]ssignee forever, subject to the terms contained in said Mortgage and Note."

*Id.* (emphasis and alterations in original).

To summarize, in *Crum*, MERS held the right to the mortgage as nominee, and could perform "any act on the lender's behalf as to the property, including selling the note and the mortgage to a third party." MERS subsequently exercised its power, and assigned the mortgage

7

and the right to the promissory note to the assignee, which then conducted a non-judicial foreclosure sale.

The Alabama Court of Civil Appeals reasoned that MERS' assignment gave the assignee the right to foreclose on the borrower. *Id.* at 269.  It reasoned that, under *Ala. Code* § 35-10-12, "with respect to mortgages executed in 1989 or later, a power to sell lands given in any mortgage 'is part of the security' and may be exercised 'by any person, or the personal representative of any person who, by assignment or otherwise, *becomes entitled to the money thus secured.*'" *Id.* (quoting *Ala. Code* § 35-10-12) (emphasis in original).  Thus, when MERS assigned the mortgage and the right to the promissory note to the assignee, the assignee became entitled to the money thus secured, and therefore, gained the power to sell lands given in the mortgage.  *See id.* at 269-70.

In this case, the relevant documents and facts are materially identical to those in *Crum*. In both cases: (1) a lender lent to a borrower; (2) the borrower executed a promissory note in favor of the lender, signed a mortgage naming MERS the mortgagee, and the mortgage instrument included a right of sale; (3) MERS assigned the right to the note and mortgage to an assignee; and (4) the assignee foreclosed at a non-judicial foreclosure sale.  Additionally, the mortgage instrument in this case uses virtually identical language as the mortgage instrument in *Crum*.  While the language slightly differs between the assignment instruments in each case, the language difference is insignificant because both instruments exercise MERS' rights under the mortgage to assign both the mortgage and the note to the assignee.

Additionally, the Southern District of Alabama addressed, and rejected, the argument Brooks makes in this case, and, in doing so, cited *Crum* approvingly.  *Mortensen v. Mortgage*

*Elec. Registration Sys.*, No. 09-0787-WS-N, Doc. #78 (S.D. Ala. Dec. 23, 2010) (Steele, J.).[4]  In *Mortensen*, the plaintiff argued that because the "note and the mortgage were initially held by two different defendants . . . . this 'split' makes 'a foreclosure unenforceable' and means that 'the note becomes, as a practical matter, unsecured.'"  *Id.* at 10.  The court rejected this argument, explaining that it "overlook[ed] evidence that both the note and the mortgage are today held by [the foreclosing party]."  *Id.* at 11.  The court cited to *Crum* in support, noting that the *Crum* court rejected the "splitting" argument advanced by the plaintiff.  *Id.* at 11-12.

Brooks makes no response at all to *Mortensen*.  With respect to *Crum*, Brooks merely says that *Crum* "ignores the law that a mortgage cannot be enforced without ownership of the underlying note."  Doc. #48 at 7.  In other words, Brooks makes no attempt to distinguish *Crum*, but simply says that *Crum* is wrong.

Brooks' argument is problematic when made before this court, due to the fact that this is a federal court sitting in diversity.  When sitting in diversity, federal courts must apply state substantive law.  *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009).  Thus, if a state supreme court has ruled on an issue of state substantive law, this court must "apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts."  *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).  Additionally, "'federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive

---

[4]This opinion is not available on Westlaw or Lexis, but is listed as the "companion opinion" to *Mortensen v. Mortgage Elec. Registration Sys.*, No. 09-0787-WS-N, 2010 WL 5376332, at *1 n.1 (S.D. Ala. Dec. 23, 2010) ("Via separate Order entered on this date, the undersigned has denied plaintiff's cross-motion for summary judgment. These two rulings are properly viewed as companion Orders, and should be read together.").

evidence that the highest state court would rule otherwise.'" *Id.* (quoting *King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158 (1948)).

In other words, under the *Erie* doctrine, this court is bound by *Crum*, a decision made by an intermediate appellate court, unless there is "persuasive evidence that the highest state court would rule otherwise."  Brooks has not presented such persuasive evidence.  While Brooks has made an argument that *Ala. Code* § 35-10-1 textually prohibits a foreclosure after splitting the note from the mortgage, that statute does not apply to this case, because Brooks' mortgage was executed after December 31, 1988.  The statute that actually applies to this case, and which *Crum* interpreted, is *Ala. Code* § 35-10-12, which applies to mortgages executed in 1989 or later. *See Ala. Code* § 35-10-16.  Similarly, the cases that Brooks cites in support of her splitting argument all predate *Ala. Code* § 35-10-12, or are from other jurisdictions.  Finally, Brooks' argument regarding Section 5.4(b) of the Third Restatement of Property is unpersuasive, as *Crum* analyzed that section and found that it *supported* the ability to foreclose under the facts presented.  *Crum*, 55 So. 3d at 269; *see also Mortensen*, *supra* at 12 ("[T]he *Crum* court found the mortgage enforceable even though the note and mortgage had originally been split, and even after examining the very section of the *Restatement* on which Mortensen relies.").

Brooks also makes a judicial estoppel argument.  Brooks claims that MERS took an inconsistent position on the splitting-the-note theory in prior litigation.  This argument is meritless.  Under judicial estoppel, "*a party* is precluded from 'asserting a claim in a legal proceeding that is inconsistent with a claim taken *by that party in a previous proceeding*.'" *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 134.30 at 134-62 (3d ed. 2000)) (emphasis added).  The

10

main problem with Brooks' argument is that Brooks is stating that "MERS" is making the arguments at issue, when in fact *Freddie Mac* is the party whose arguments Brooks is attacking. Thus, because Brooks is pointing to a prior position taken by MERS, not Freddie Mac, the doctrine of judicial estoppel is inapplicable.

In sum, the foreclosure was proper, and therefore, under the facts and theories presented, the quiet title, wrongful foreclosure, and trespass counterclaims are due to be dismissed.[5]

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED that Freddie Mac's Motion to Dismiss (Doc. #25) is GRANTED, and all counterclaims against it are DISMISSED with prejudice.

DONE this 25th day of August, 2011.

    /s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] This court does not find that, in every case, a proper foreclosure precludes these types of claims.